## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

E.N.,

           **Plaintiff**

      **v.**

**SUSQUEHANNA TOWNSHIP
SCHOOL DISTRICT, JAMES FRANK,
NANCY FRANK, KERMIT LEITNER,
DAVID W. VOLKMAN, SANDIE L.
PENSIERO, RANDY BRENNER,** *and*
**JUDY BAUMGARDNER,**

         **Defendants**

:   **CIVIL ACTION NO. 1:09-CV-1727**
:
:   **(Judge Conner)**
:
:
:
:
:
:
:
:
:
:
:
:

## MEMORANDUM

Plaintiff E.N. brings this action for damages against defendants under

42 U.S.C. § 1983, and 20 U.S.C. § 1681(a). E.N. also brings pendent state law claims

for damages under the Pennsylvania Constitution and state tort law. Presently

before the court is defendants' motion (Doc. 19) to dismiss the complaint pursuant

to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be

granted. For the reasons that follow, the motion will be granted in part and denied

in part.

# I.     BACKGROUND

## A.     Statement of Facts[1]

This suit arises from allegations that a male high school teacher sexually assaulted a sixteen-year-old female student during a driving lesson. The alleged victim has since graduated from high school. (Doc. 1 ¶ 7). The court refers to the plaintiff by her initials, E.N., due to the sensitive nature of the claims and the minor status of the plaintiff at the time of the alleged assault. (Id. ¶ 34); see also L.R. 5.2(d)(2).

E.N. was a student at Susquehanna Township High School ("the school") from 2004 to 2008. (Doc. 1 ¶ 36). In the spring of 2006, E.N. was simply one name on a long waiting list for behind-the-wheel driver education available through the school. (Id. ¶ 41). The instructor was defendant James Frank ("Frank"), a long-time teacher at the school. (Id. ¶¶ 12, 37, 39). E.N. purportedly asked Frank whether she could move up the list and take her driving lessons sooner. (Id. ¶¶ 41-42). Frank supposedly offered her the option of taking after-school lessons. (Id. ¶ 43). According to the complaint, E.N. accepted the offer but specifically requested that other students be included. (Id. ¶ 48). Moreover, other students separately asked Frank for permission to participate in after-school lessons with E.N. (Id.

_____

[1] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the complaint. See infra Part II. However, those portions of the complaint which consist of no more than legal conclusions or a formulaic recitation of the elements of a cause of action have been disregarded. Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).

¶ 49).  Frank allegedly rebutted these entreaties and took only E.N. for the after-school lessons.  (Id. ¶ 47).  Private lessons violate an express policy of the school district, which provides: "at no time will a driver education teacher instruct one student in the car.  Two or more students will be scheduled during each driving period."  (Id. ¶ 47, Ex. A).  Principal Kermit Leitner ("Leitner"), superintendent David W. Volkman ("Volkman"), and former principal Mark Galowitz were aware that Frank provided individualized lessons in violation of this policy.  (Id. ¶¶ 51, 53-55).

E.N. had three driving lessons with Frank.  (Id. ¶ 47).  During E.N.'s first driving lesson, on February 23, 2006, Frank touched E.N.'s thigh while telling her to brake harder.  (Id. ¶¶ 57-58).  During the second driving lesson, on March 1, 2006, Frank allegedly reached across E.N.'s body without her permission to buckle her seat belt.  (Id. ¶¶ 60,61).  While driving past an area with adult entertainment establishments, Frank purportedly suggested that he and E.N. visit the area together in the future.  (Id. ¶ 63).  The third driving lesson occurred on March 8, 2006.  (Id. ¶ 64).  During this lesson, Frank allegedly asked E.N. to pull the car over near a wooded area and directed E.N. to follow him into the woods.  E.N. complied. (Id. ¶¶ 65-67).  Once in the woods, Frank purportedly unbuttoned his pants and instructed E.N. that if she knew what was good for her she would "do this."  (Id. ¶¶ 68-69).  Frank allegedly pushed E.N. to her knees and forced her to perform oral sex.  (Id. ¶¶ 71-72).  When it was over, Frank warned E.N. not to tell anyone what had happened because he knew where she lived.  (Id. ¶75).  Frank and E.N.

returned to the vehicle, and Frank took E.N. for her driver's exam, which she passed. (Id. ¶¶ 74, 76).

Approximately two months later, on May 7, 2006, E.N. informed her English teacher that she had been sexually assaulted. (Id. ¶ 77). On the advice of the English teacher, E.N. notified two guidance counselors—defendants Sandie L. Pensiero ("Pensiero") and Randy Brenner ("Brenner")—about the sexual assault, although she did not disclose the identity of the person who had assaulted her. (Id. ¶¶ 78-79). Pensiero and Brenner were initially supportive. When E.N. named Frank as the man who had assaulted her, Pensiero and Brenner tried to persuade E.N. to change her story. (Id. ¶¶ 80-81, 87). Thereafter, Pensiero and Brenner advised E.N. that school administrators were skeptical of her allegations and that the allegations had brought Frank to tears. (Id. ¶¶ 82-84). In addition, Pensiero allegedly divulged details of the assault to a third person without E.N.'s consent. (Id. ¶¶ 85-86).

Although the school district suspended Frank in May of 2006 as a result of the allegations (id. ¶ 92), many of the school administrators, teachers, and students openly supported Frank. On July 20, 2006, Principal Leitner sent a letter to school district employees soliciting money for Frank's defense fund. (Id. ¶ 88; id. Ex. B). After he retired from the school district, Leitner sent a second letter to district employees in February 2007. (Id. ¶ 89; id. Ex. C). In this second letter, Leitner expressed his belief that Frank's accuser was not telling the truth and that he "could have minimally gotten her to changer her story (again) or recant it

4

altogether" but that he had been denied the opportunity to interrogate her. (Id. ¶ 89; id. Ex. C at 1). Neither letter specifically mentioned E.N. by name or provided any details of the alleged assault. (Id. Exs. B, C).

Teachers encouraged students to start a school petition in support of Frank and administrators made no effort to stop the petitioning. (Id. ¶¶ 106, 108). In a class attended by E.N., a teacher displayed on an overhead projector a Leitner letter soliciting money in support of Frank. (Id. ¶¶ 109-110). Students wore tee-shirts that read "FREE FRANK" in a senior class photo displayed and circulated at the high school. (Id. ¶¶ 112-113).

Nancy Frank ("Mrs. Frank"), Frank's wife, was a substitute teacher in the school district. On multiple occasions, the school district assigned Mrs. Frank to substitute-teach E.N.'s classes. (Id. ¶¶ 100-101). At various times, Mrs. Frank complained to students in her classes about her husband's mounting legal fees and the difficulties created by E.N.'s allegations. (Id. ¶ 104).

In August of 2006, despite his suspension, Frank was permitted on the school campus when E.N. was also on campus participating in school-sponsored activities. (Id. ¶¶ 93-94). After Frank's reinstatement in 2007, the school district made no effort to restrict Frank's contact with E.N. (Id. ¶¶ 95, 99). Throughout this period, E.N. and her parents notified the new principal, defendant Judy Baumgardner ("Baumgardner"), of E.N.'s extreme discomfort. (Id. ¶ 116). Despite their entreaties, Baumgardner simply excused E.N. from certain attendance requirements, and burdened E.N. with the decision to escape those situations she

found stressful.  (Id. ¶¶ 115-120).  Because of her constant distress on campus, E.N. completed the requirements of her senior year in homebound instruction.  (Id. ¶ 122).

According to the complaint, the circumstances of E.N.'s homebound instruction were also a source of humiliation and embarrassment.  The school district conducted tutoring at a public library, and E.N.'s plight was on display to the general public.  (Id. ¶¶ 123-124).  E.N. also avers that the homebound instruction did not provide the same quality of instruction, depriving her of educational opportunities available to other students.  (Id. ¶ 125).

E.N. alleges that the school administration failed to investigate her allegations, to make findings, or to discipline Frank.  (Id. ¶¶ 96-98).  E.N. states the administration knew of past misconduct by Frank, including inappropriate touching of females, inappropriate comments to females, taking inappropriate pictures of females and preferential treatment of females.  (Id. ¶¶ 127-128).  E.N. points to statements by three administrators—Leitner, Volkman, and former principal Mark Galowitz—admitting their awareness of Frank's individual lessons in contravention of district policy. (Id. ¶¶ 52-55).  Additionally, Brenner has acknowledged that Frank had gained a reputation over the years for paying inappropriate attention to female students and teachers.  (Id. ¶ 130).

The complaint identifies two specific instances of inappropriate sexual behavior by Frank in the school context prior to the alleged sexual assault.  First, Frank purportedly approached a female student at a school dance during the 1999-

6

2000 school year and asked to see her nipple piercing. (Id. ¶ 132). This student filed

a complaint with the school's dean of students, Harold Wilson. (Id. ¶ 133). Second,

Frank allegedly looked down the blouse of a female teacher and asked to see the

tattoo on her breast. (Id. ¶ 135). More generally, E.N. avers that both students and

faculty were aware of Frank's reputation—spanning decades of teaching—for

inappropriate flirtation and physical contact. (Id. ¶¶ 128-129). E.N. avers that the

school district never disciplined Frank for any of this offensive conduct. (Id. ¶ 134,

142).

### B. Procedural History

E.N. filed this civil action on September 4, 2009. (See Doc. 1). In Counts I

and II, E.N. claims that Frank, Leitner, Volkman, Pensiero, Brenner, and the school

district violated her Fourth Amendment right under the U.S. Constitution to be free

from governmental seizures, and her Fourteenth Amendment right to personal

security and bodily integrity. Count III alleges a violation of E.N.'s Fourteenth

Amendment right to privacy against all defendants, except Frank. E.N. alleges in

Count IV claims that the school district violated Title IX of the Education

Amendments of 1972, 20 U.S.C. § 1681, by maintaining a hostile educational

environment. E.N. alleges in Counts V and VI that all defendants violated her right

to an education under Title IX, and all defendants (except Frank) retaliated against

her for complaining about Frank's conduct. Counts VII and VIII allege state tort

law claims of Intentional Infliction of Emotional Distress against all defendants and

assault and battery against Frank. Count IX states a claim for *repondeat superior*

7

liability against the school district.  E.N. alleges violations of the Pennsylvania

Constitution in Count X against all defendants, and she seeks punitive damages

against all defendants in Count XI.  Defendants filed a motion (Doc. 19) to dismiss

the action pursuant to Federal Rule of Civil Procedure 12(b)(6).  The motion has

been fully briefed and is now ripe for disposition.

## II.    <u>STANDARD OF REVIEW</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief can be granted.

Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable

reading of the complaint, the plaintiff may be entitled to relief." <u>Gelman v. State</u>

<u>Farm Mut. Auto. Ins. Co.</u>, 583 F.3d 187, 190 (3d Cir. 2009) (quoting <u>Phillips v. County</u>

<u>of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)); <u>see also</u> <u>Kanter v. Barella</u>, 489 F.3d

170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).

Although the court is generally limited in its review to the facts contained in the

complaint, it "may also consider matters of public record, orders, exhibits attached

to the complaint and items appearing in the record of the case." <u>Oshiver v. Levin,</u>

<u>Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); <u>see also</u> <u>In re</u>

<u>Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the

defendant notice of what the . . . claim is and the grounds upon which it rests."

Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a two-step inquiry.  In the first step, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009) (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, --- U.S. at ---, 129 S. Ct. at 1949.  When the complaint fails to establish defendant liability, however, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

### III.    **DISCUSSION**[2]

E.N. asserts a number of claims stemming from the allegations of unwanted touching, inappropriate comments, and sexual assault.  The claims may be categorized into four general classes: claims arising under the U.S. Constitution, claims arising under Title IX, claims arising under the Pennsylvania Constitution, and claims in tort arising under Pennsylvania common law.

### A.    **Claims under the U.S. Constitution**

An individual may bring suit under 42 U.S.C. § 1983 when persons, acting under color of state law, violate the individual's federal constitutional or statutory rights.  42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (deprivation of constitutional right must be person acting under color of state law).  School districts are state actors for purposes of § 1983 actions.  See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  School administrators and employees may be considered state actors for purposes of the Fourth and Fourteenth Amendments.  See New Jersey v. T.L.O., 469 U.S. 325, 336 (1985) (Fourth Amendment); Goss v. Lopez, 419 U.S. 565 (1975) (Fourteenth Amendment).

---

[2] The court has original jurisdiction over E.N.'s federal constitutional and statutory claims pursuant to 28 U.S.C. §§ 1331 and 1343.  The court exercises supplemental jurisdiction over the pendent state matters pursuant to 28 U.S.C. § 1367(a).

1. **Fourth Amendment**

The Fourth Amendment, applicable to the states through the Fourteenth Amendment, <u>Wolf v. Colorado</u>, 338 U.S. 24, 27-28 (1949), protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. CONST. amend. IV. "It has been said of the Fourth Amendment that its 'overriding function . . . is to protect personal privacy and dignity against unwarranted intrusion by the state.'" <u>Ingraham v. Wright</u>, 430 U.S. 651, 674 n.42 (1977) (quoting <u>Schmerber v. California</u>, 383 U.S. 757, 767 (1966)). Nonetheless, the Fourth Amendment's protection against unreasonable searches and seizures is principally concerned with criminal investigations. <u>Id.</u> (citing <u>Whalen v. Roe</u>, 429 U.S. 589, 604 n.32 (1977)).

In the instant matter, E.N. characterizes the sexual assault by Frank as a "government seizure" within the meaning of the Fourth Amendment. (<u>See</u> Doc. 1 ¶ 159). The Fourth Amendment applies to public schools, <u>see</u> <u>T.L.O.</u>, 469 U.S. 325, and hence school officials and employees. However, plaintiff provides no authority for a Fourth Amendment claim based on the sexual assault of a student. Those cases applying the Fourth Amendment to public school officials are limited to investigations of student misconduct and student discipline. <u>See id.</u>[3] In <u>SF ex rel.</u>

---

[3] E.N. cites to <u>Shertzer v. Penn Manor Sch. Dist.</u>, 422 F.3d 141 (3d Cir. 2005), and <u>New Jersey v. T.L.O.</u>, 469 U.S. 325 (1985), for the proposition that criminal investigation is not a prerequisite for a Fourth Amendment claim. These cases involve school investigations and disciplinary proceedings. In <u>New Jersey v. T.L.O.</u>, school authorities searched a student's purse and found illegal contraband, which led to delinquency charges in state juvenile court. 469 U.S. 325 (1985). In <u>Shertzer</u>,

<u>Freeman v. Delaware Valley School Dist.</u>, No. 3:08-CV-581, 2008 WL 4680580 (M.D.

Pa. 2008), the court rejected a Fourth Amendment claim brought by the parents of a

minor who had been inappropriately touched by her third-grade teacher.  The court

noted that the claim did not concern an intrusion of privacy during the course of a

criminal investigation and, therefore, the plaintiff could not proceed on a Fourth

Amendment theory.  <u>Id.</u> at *6; <u>see</u> also <u>K.K. ex rel. Knowles v. Weeks</u>, Civ. No. 1:CV-

04-2290, 2007 WL 2782273 at * 6 (M.D. Pa. Sept. 21, 2007)  Similarly, in the instant

matter, E.N. does not allege an invasion of privacy during the course of an

investigation.  To the contrary, the complaint alleges the commission of a sexual

assault by a rogue actor.  Accordingly, the court must dismiss plaintiff's Fourth

Amendment claims.

2. <u>Fourteenth Amendment—Bodily Integrity</u>

a. <u>Frank</u>

The Fourteenth Amendment protects individuals from arbitrary government

interference with certain protected liberty interests.  An individual's interest in

bodily integrity—to be free from physical abuse or unwanted medical treatment by

---

school administrators placed a student in a conference room for several hours
during investigation of his alleged misconduct.  422 F.3d 141 (3d Cir. 2005).  The
student subsequently brought a procedural due process claim under the Fourth
Amendment stemming from the continued confinement.  <u>Id.</u> at 146-47.  Thus, both
cases are factually distinguishable.  Interestingly, the Supreme Court has never
addressed the standard for public school "seizures" under the Fourth Amendment.
In adopting a reasonableness standard for Fourth Amendment seizures in the
public school context, the Third Circuit recognized "the unique responsibilities
public schools bear, *particularly with regard to disciplinary matters*."  <u>Shertzer</u>, 422
F.3d at 148 (emphasis added).

government officials—is among the fundamental liberty interests protected by the Fourteenth Amendment. <u>See</u> <u>Black v. Indiana Area Sch. Dist.</u>, 985 F2d 707, 709 n.1 (3d Cir. 1993) ("Plaintiff's have a liberty interest in their bodily integrity that is protected by the Fourteenth Amendment.") (citing <u>Ingraham</u>, 430 U.S. at 673-74 and <u>Youngberg v. Romeo</u>, 457 U.S. 307, 315 (1982)); <u>Stoneking v. Bradford Area Sch. Dist.</u>, 882 F.2d 720, 726 (3d Cir. 1989) (right to be free from invasion of personal security through sexual abuse well-established).

In the instant matter, E.N. alleges that Frank forced her to perform a sex act in the course of driving lessons sponsored by the school district. At all relevant times, Frank was an employee of the school district. E.N.'s allegations raise the plausible inference that Frank used his authority as the driver's education teacher to coerce her into the sex act. Thus, E.N. has adequately alleged a Fourteenth Amendment injury under color of state law as to Frank.[4]

---

[4] Although defendants' motion is framed as a motion to dismiss all counts as to all defendants, their brief concedes this point. (<u>See</u> Doc. 22, at 24).

**b.      School District Liability**[5]

A school district may be liable under 42 U.S.C. § 1983 for the violation of an

individual's federal statutory or constitutional rights when it implements an official

policy or custom that results in a constitutional deprivation.  See Monell v. Dept. of

Soc. Servs., 436 U.S. 658, 694 (1978) ("It is when execution of a government's policy

or custom, whether made by its lawmakers or by those whose edicts or acts may

fairly be said to represent official policy, inflicts the injury that the government as

an entity is responsible under § 1983.").  A school district cannot be held liable

solely for the acts of its employees on a *respondeat superior* theory.  Id. at 691.

In the instant matter, E.N. must prove that the district established and

maintained a custom or policy that affirmatively contributed to E.N. being

assaulted.  See Gottlieb v. Laurel Highlands Sch. Dist., 272 F.3d 168, 176 (3d Cir.

2001).  Additionally, E.N. must establish that a supervisory official or final policy

maker of the school district, with actual knowledge of similar conduct in the past,

acted with deliberate indifference in response thereto.  See id.

---

[5] E.N. states in her complaint that the relevant charges against school district employees are brought against them in their individual *and* official capacities. (Doc. 1 ¶ 28).  Asserting a claim against a government employee in his or her official capacity is simply another way of asserting a claim against the public entity.  Mitros v. Borough of Glenolden, 170 F. Supp. 2d 504, 506 (E.D. Pa. 2001) (citing Brandon v. Holt, 469 U.S. 464, 471-72 (1985)) ("Where a suit is brought against a public offic[ial] in his official capacity, the suit is treated as if [it] were brought against the governmental entity of which he is an offic[ial].").  The school district is a named defendant in all constitutional claims against Leitner, Volkman, Pensiero, Brenner, Baumgardner, and Mrs. Frank; therefore, the court will address the official capacity and school district liability claims as one.

### i.  School District Custom or Policy

E.N. alleges unofficial customs of the school district lead to the sexual assault.  A custom exists when a policy, though not an official edict, is so well-settled and permanent that it approximates official policy.  See Beck v. City of Pittsburg, 89 F.3d 966, 971 (3d Cir. 1996).  Custom may be established by knowledge and acquiescence on the part of an official policymaker.  Id.

The courts have noted three scenarios where a government employee's actions, or in this case, school district employee's actions may be deemed to be the result of a policy or custom of the entity that subjects the school district to § 1983 liability: (1) when an appropriate officer or entity promulgates a statement of policy and the employee's act is an implementation of that policy; (2) when the act of the policymaker violates federal law; and (3) when a policymaker fails to act affirmatively despite the obvious need for action to control agents of the government.  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003).  The instant matter implicates the third scenario.

E.N. avers that the school district and defendants in their official capacities maintained several customs that resulted in her injury.  First, the school district had a custom of inadequate training for employees who are likely to respond to incidents of sexual harassment. (Doc. 1 ¶¶ 144, 166).  Second, the school district had a custom of ignoring or downplaying reports of harassment. (Id. ¶¶ 138-39).  Third, the school district had a custom of suppressing specific complaints of harassment against Frank. (Id. ¶¶ 138-39, 142).  Fourth, the school district had a custom of

allowing Frank to take students out for driving lessons alone, in violation of official school district policy.  (Id. ¶ 52).

Liability requires more than proof of an opportunity for the school district to avert the injury and a failure to seize the opportunity.  E.N. must establish that a policy, practice or custom played an *affirmative* role in bringing about the sexual abuse and that the school district acted with deliberate indifference.  See Black, 985 F.2d at 712 (discussing Stoneking, 882 F.2d 720, in which a high school concealed complaints of sexual abuse of students by teachers, failed to investigate complaints, and required complainants to apologize to accused teachers thus precluding summary judgment for school officials).  This requires "something more culpable than a negligent failure to recognize [a] high risk of harm" to plaintiff.  Colburn v. Upper Darby, 946 F.2d 1017, 1025 (3d Cir. 1991).  Context is key.  Black, 985 F.2d at 713 (context in which school sexual abuse investigation shortcoming occurred "cannot be ignored").

Failure to train is a valid basis for § 1983 liability only when such failure amounts to deliberate indifference.  Beck, 89 F.3d at 971-72 (noting the adoption of the deliberate indifference standard in other policy/custom contexts outside the area of police training) (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)); Young v. Pleasant Valley Sch. Dist., No. 3:07-cv-854, 2008 WL 417739 at *5 (M.D. Pa. Feb 13, 2008).  In City of Canton v. Harris, the Supreme Court stated that,

> [i]t may seem contrary to common sense to assert that a municipality
> will actually have a policy of not taking reasonable steps to train its
> employees. But it may happen that in light of the duties assigned to
> specific officers or employees the need for more or different training is
> so obvious, and the inadequacy so likely to result in the violation of
> constitutional rights, that the policymakers of the city can reasonably
> be said to have been deliberately indifferent to the need.

489 U.S. at 390.

E.N. must also establish that the deficiency in training is related to the

ultimate injury. City of Canton, 489 U.S. at 391. In other words, the acquiescence,

encouragement or condonation must contribute to the injury. Beck, 89 F.3d at 972

(citing Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)). Thus, E.N. must

demonstrate a "plausible nexus" or "affirmative link" between the custom and the

deprivation of constitutional rights. Bielevicz, 915 F.2d at 850. 'A sufficiently close

causal link between . . . a known but uncorrected custom or usage and a specific

violation is established if occurrence of the specific violation was made reasonably

probable by permitted continuation of the custom.' Id. at 851 (quoting Spell v.

McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1988) and adopting this formulation of the

causation requirement). A failure to train amounts to deliberate indifference when

the failure to train has caused a pattern of violations. Kelly v. Borough of Carlisle, --

-F.3d--- (3d Cir. 2010), 2010 WL 3835209 at *15; Kline ex rel. Arndt v. Mansfield, 255

Fed. Appx. 624, 630, No. 06-4583, 2007 WL 4171108 at *3 (3d Cir. 2007) (discussing

allegations of failure to train school district employees to recognize and report

sexual abuse).

17

E.N. has adequately alleged the presence of several school district customs that proximately caused her injury. E.N. avers that Frank has a long history of inappropriate comments and physical touching. E.N. alleges prior instances of abusive and harassing conduct by Frank for which the school district failed to impose any disciplinary action. E.N. alleges the school district knew that Frank was taking students out alone in direct violation of the school district driver education policy. Former Principal Galowitz, former Principal Leitner and school district Superintendent Volkman were aware of Frank's contravention of the policy, and Galowitz purportedly gave Frank express permission to violate the policy. E.N. avers that the school district's numerous acts and omissions enabled Frank to continue his wrongful conduct and caused her to suffer the assault as set forth in the complaint.

### ii.   **Policy Maker**

Liability under § 1983 must stem from policy making authority. Only an individual with final decisionmaking authority can make official policy on behalf of the school district. See Pembauer v. City of Cincinnati, 475 U.S. 469, 483-84 (1986). "[I]n order to ascertain who is a policy maker a court must determine which official has final, unreviewable discretion to make a decision or take action." Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996). Whether a person has final decisionmaking authority is a question of state law. McGreevy v. Stroup, 413 F.3d 359, 368 (3d Cir. 2005); Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989); City of St. Louis v. Praprotnik, 485 U.S. 112 (1988).

A single decision by an individual with policy making authority may be sufficient to impose liability on the school district. See Pembaur, 475 U.S. at 480 (stating that "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances"); McGreevy, 413 F.3d at 367-68. However, not every decision by an officer subjects a school district to liability. "[School district] liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur, 475 U.S. at 483. If an employee's action is subject to discretionary review, the employee is not a final policymaker under § 1983. Brennan v. Norton, 350 F.3d 399, 428 (3d Cir. 2003).

The final policy maker for the school district is typically the school board, or the superintendent. See 24 Pa. Cons. Stat. Ann. §§ 5-508, 5-510, 5-514, 10-1081(superintendent duties); McGreevy, 413 F.3d at 369. The school board has not been named in the instant action, but the complaint alleges failure to investigate, train and discipline school district employees sufficient to provide notice to the school district of a custom or policy. See SF ex rel. Freeman, 2008 WL 4680580 at *5 (noting that plaintiff's claims against school district arose from failure to train and supervise not just by principal but by school board overseeing individual officials and although complaint did not allege specific facts as to school board, the pleadings provided sufficient notice to the school district).

E.N. generally avers that "all individual defendants had the duty and authority to effectuate the policies and customs of the School District and to implement and execute all federal, state and School District regulations and/or policies relevant to the operation of a public school." (Doc. 1 ¶ 29). This general averment is insufficient to establish all defendants possessed final policymaking authority for the school district. The complaint is devoid of facts alleging that counselors Brenner and Pensiero, either possessed or were delegated final decision making authority on behalf of the school district to establish driver's education policies or train, supervise, or discipline teachers. Furthermore, the Third Circuit, in Johnson v. Elk Lake Sch. Dist., 283 F.3d 138 (3d Cir. 2002), specifically found that a guidance counselor did not qualify as a final policymaker or supervisory official. Id. at 144. As a result, the school district could not be held liable under § 1983 for the guidance counselor's actions or inaction. Id.; see also Warren ex rel. Good v. Reading Sch. Dist., 278 F.3d 163 (3d Cir. 2002). Only Superintendent Volkman, who oversees the operation of the school district and who by statutory authority is bestowed with certain specific duties, clearly qualifies as a final policymaker for the school district. At this juncture, it is unclear whether defendant Leitner may qualify as a final policymaker in certain areas and, therefore, the court will include defendant Leitner in its deliberate indifference analysis.

### iii.    **Actual Knowledge and Deliberate Indifference**

For § 1983 school district liability, E.N. must also establish that the policy makers had actual knowledge of past misconduct and were deliberately indifferent to the violations. E.N. alleges misconduct dating back to 1975 as well as two specific instances of sexual harassment by Frank. E.N. claims that Frank engaged in inappropriate touching and comments, and that he had a reputation in the school for such behavior. In addition, E.N. avers that the school district never disciplined Frank or even investigated allegations of his misconduct. Moreover, E.N. explicitly alleges that school district employees were aware of Frank's violations of the driver education policy.

Although rumors, in the context of a high school are insufficient to impute actual knowledge of sexual assault to a school's administration, see Johnson, 238 F.3d at 144 (holding that "[i]n the absence of any direct complaints made to school officials, the mere floating around of unsubstantiated rumors regarding a particular employee—particularly in the high school setting, which is notoriously rife with adolescent gossip—does not constitute the kind of notice for which a school district can be held liable under Monell's 'policy or custom' requirement"), the instant complaint sufficiently alleges actual knowledge and deliberate indifference. Therefore, the court concludes that the complaint states a claim under § 1983 upon which relief can be granted for violation of E.N.'s Fourteenth Amendment right to bodily integrity.

### 3. <u>Individual Capacity § 1983 Liability</u>

E.N. states claims for individual capacity § 1983 liability against Leitner, Volkman, Pensiero, and Brenner for violation of her Fourteenth Amendment right to bodily integrity. An official may be sued in his or her individual capacity under § 1983, subject to qualified immunity. For defendants to be held liable in their individual capacities, plaintiff must show each defendant individually participated in or approved of the alleged constitutional violation. <u>See</u> <u>C.N. v. Ridgewood Bd. of Educ.</u>, 430 F.3d 159, 173 (3d Cir. 2005) (discussing the § 1983 liability of a school board and individual defendants in context of alleged privacy and speech violations).

The Supreme Court has established a two-part inquiry for individual capacity liability: the court determines whether there has been a violation of a constitutional right, and the court determines whether that right was clearly established. <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 818 (2009) (holding that courts have discretion to determine the appropriate order in which to address the two prongs of the test); <u>see</u> <u>also</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). An official is entitled to qualified immunity when "[his or her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Sharrar v. Felsing</u>, 128 F.3d 810, 826 (3d Cir. 1997) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).

E.N. does not allege that Pensiero or Brenner participated in the sexual assault or approved of Frank's conduct.  Nor is there any indication that Brenner and Pensiero had any authority to supervise, let alone discipline, Frank.  In the absence of allegations of personal involvement, the individual capacity claims will be dismissed.  Leitner and Volkman also did not participate in or approve of the alleged sexual assault, but they may be found liable in their individual capacities on a supervisory liability basis.

A supervisor may be liable under § 1983 for the unconstitutional actions of his or her subordinates when he or she participates in the unconstitutional action, directed the action or, as supervisor, had knowledge and acquiesced in the subordinate's violation.  See A.M. ex rel. J.M.K. v. Luzerne Cnty Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citing Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d. Cir. 1995).  Officials in administrative positions may be liable for actions that encourage, support, or condone the assaultive behavior of subordinates.  Stoneking, 882 F.2d at 729; id. at 729-30) (citing and discussing Commonwealth v. Porter, 659 F.2d 306 (3d Cir. 1981) and Black v. Stephens, 662 F.2d 181 (3d Cir. 1981).  However, inaction and insensitivity alone are insufficient.  Stoneking, 882 F.2d at 730 (citing Rizzo v. Goode, 423 U.S. 362 (1976)).  Affirmative action is required.  Id. at 731 (concluding that record lacked indication of affirmative acts by superintendent of school district to show condonation, encouragement or toleration of sexual harassment by teachers within district).

Thus, E.N. must allege a supervisory practice defendants failed to employ, contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incident, and circumstances under which the supervisor's inaction could be found to communicate a message of approval. Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997). E.N. must also establish proximate cause between her injury and the supervisor's action or inaction. Brown v. Muhlenberg Tp., 269 F.3d 205, 216 (3d Cir. 2001). "[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more that he or she did." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). The supervisor must participate or be directly involved in the constitutional violation. See Brown v. Grabowski, 922 F.2d 1097, 1119-20 (3d Cir. 1990).

E.N. avers that Leitner and Volkman were aware Frank was violating the school district driver education policy, and that they knew of and failed to investigate prior acts of misconduct towards female students and teachers by Frank spanning back to 1975. She further avers that Leitner and Volkman failed to discipline Frank. It is reasonable to infer that continuous inaction constituted tacit approval of Frank's conduct. The complaint is sufficient to state a claim for § 1983 individual capacity liability against Leitner and Volkman.

### 4. **Fourteenth Amendment—Invasion of Privacy**

Count III, sets forth a cause of action for Fourteenth Amendment[6] right to privacy violations, alleging that Leitner, Volkman, Pensiero, Brenner, Baumgardner, Mrs. Frank, and the school district released information about the sexual assault complaint to members of the public. The right to privacy "protects two types of privacy interests: 'One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.'" Hedges v. Musco, 204 F.3d 109, 121 (3d Cir. 2000) (quoting Whalen v. Roe, 429 U.S. 589, 599-600 (1977); see also Sterling v. Borough of Minersville, 232 F.3d 190, 193-96 (tracing the development and treatment of the right to privacy in Supreme Court and Third Circuit jurisprudence). The former is at issue in the instant matter.

Under Third Circuit jurisprudence, the threshold inquiry is whether the information is "within an individual's reasonable expectations of confidentiality." C.N. 430 F.3d at 178 (quoting Fraternal Order of Police v. City of Philadelphia, 812 F.2d 105, 112 (3d. Cir. 1987) (quotations omitted). The more intimate and personal the information, the more justified the expectation that the information will not be publically disclosed. Id. There is no constitutionally protected privacy interest in

---

[6] E.N.'s complaint couches her privacy claim in terms of the Fourth, Fifth, Ninth, and Fourteenth Amendments. The court will analyze this claim in accordance with Supreme Court jurisprudence, which anchors such substantive protections in the Fourteenth Amendment's Due Process Clause. See e.g., Planned Parenthood of S.E. Pa. v. Casey, 505 U.S. 833, 846-51 (1992).

information divulged in police reports that are a matter of public record.  See

Scheetz v. The Morning Call, 946 F.2d 202, 205 (3d. Cir. 1991); id. at 207 (discussing

how plaintiff could not expect information reported to police as part of potential

crime to remain private when police could bring charges without her concurrence

and "at which point all the information would have wound up on the public record,

where it would have been non-confidential") (citing Cox Broadcasting Corp. v.

Cohn, 420 U.S. 469, 494-95 (1975) (privacy interest fades when information is in

public record)).

### a.  School District

The complaint generally avers that "the school district was aware of and

permitted other communications from and between school employees to non-

employees and parents disclosing confidential details of E.N.'s complaint" (Doc. 1 ¶

90), and that the school district had a custom or policy of disclosing personal

matters without consent.  (Id. ¶ 173).  Yet, beyond the specific allegation that

Pensiero's alleged disclosure to a parent (id. ¶¶ 85-86),  the complaint does not

indicate any other revelations of information.  Her general averment, formulaically

reciting a required element for liability, without more, does not provide adequate

notice to the school district to state a claim for which relief may be granted as

required by FED. R. CIV. P. 8(a).  The statements need not be credited by the court

without more specific allegations.  <u>Maier ex rel. B.T. v. Canon McMillan Sch. Dist.</u>,

No. 08-0154, 2008 WL 5062137 at *2 (W.D. Pa. Nov. 26, 2008).[7]

### b. **Individual Defendants**

The remaining defendants may be individually liable under § 1983 if they

violated E.N.'s constitutional right to privacy under the confidentiality branch of

the Fourteenth Amendment privacy protections, and if the right is well-established.

<u>See</u> <u>Pearson</u>, 129 S. Ct. 808; <u>see also</u> <u>Saucier</u>, 533 U.S. at 20.  Each defendant will be

discussed in turn.

### i. **Leitner**

Leitner distributed two messages to school district employees (and a

potentially wider audience) soliciting financial and moral support for Frank as he

prepared to defend criminal charges.[8]  (<u>See</u> Doc. 1, Ex. B, C).  Leitner's letters do

not violate any Fourteenth Amendment confidentiality interest because they do not

contain any private information about the complaint or even mention E.N. by

_____

[7] In her brief in opposition(Doc. 25), E.N. argues that her private information
is statutorily protected from disclosure under the Family Educational Rights and
Privacy Act of 1974 ("FERPA"),  20 U.S.C. § 1232(g), and its regulations, 34 C.F.R.
Part 99.  FERPA prohibits federal funding of institutions that have a policy or
practice of releasing education records to unauthorized persons, but it creates no
personal right of action under § 1983.  <u>Gonzaga v. University of Doe</u>, 536 U.S. 273,
276 (2002); <u>P.N. v. Greco</u>, 282 F. Supp. 2d 221, 245 (D.N.J. 2003).

[8] The court notes that Leitner retired from the school district on August 1,
2006, and any correspondence he maintained with school district employees after
his retirement may not be characterized as state action.  The court observes,
nonetheless, that Leitner never revealed E.N.'s identity in his later messages even
as he editorialized about her suspect credibility.  (<u>See</u> Doc. 1, Ex. C).

name.  (Id.)  Accordingly, the complaint fails to state a Fourteenth Amendment claim for invasion of privacy against Leitner individually.

### ii.    **Mrs. Frank**

E.N.'s encounters with Mrs. Frank took place in the 2006-2007 school year—after Frank's suspension, the criminal investigation and Frank's arraignment.  Mrs. Frank purportedly complained to students in her classes about her family problems stemming from E.N.'s allegations.  (Doc. 1 ¶ 104).  The complaint does not specify the nature of any information revealed; it merely avers that Mrs. Frank lamented to her students that E.N.'s complaint had created difficulties for her family.  (Id.)

Mrs. Frank's statements to other students about her personal, financial, and familial hardship, although inappropriate, could not reasonably be perceived as impinging upon any privacy interest of E.N.  Mrs. Frank discussed with students her family's financial troubles connected to Frank's suspension and criminal defense—matters that she learned as Frank's spouse rather than as an employee of the school district.  Ms. Frank's revelations were not based on information E.N. entrusted with the school district regarding the sexual assault, and E.N. cites no authority holding that a government official is bound by a constitutional duty not to discuss her personal life.  In short, Mrs. Frank's alleged ramblings to students involved only *Mrs. Frank's* personal  information, and the disclosures occurred *after* a public criminal prosecution was already underway.  Therefore, E.N. fails to state a constitutional invasion of privacy claim as to Mrs. Frank.

28

### iii. __Pensiero__

The complaint cryptically alleges that Pensiero disclosed to a third person "confidential matters and intimate facts concerning E.N. that E.N. had disclosed to her in confidence." (Doc. 1 ¶ 86). It does not identify the nature of these "confidential matters," and it is unclear whether Pensiero specifically disclosed E.N.'s identity. Nevertheless, the complaint sufficiently places Pensiero on notice of the particular conversation alleged at issue, and therefore, the court will not dismiss the claim against Pensiero at this juncture.[9]

### iv. __Volkman, Baumgardner, and Brenner__

The complaint also names Volkman, Baumgardner, and Brenner as defendants in the invasion of privacy count, but contains no allegations of specific disclosures by these defendants. Moreover, there are no allegations that the defendant administrators—Leitner, Volkman, and Baumgardner—directed or acquiesced in Pensiero's improper disclosure. Therefore, the claims against them

_____

[9] Defendants cast doubt on whether an isolated breach of privacy by a government employee is a cognizable Fourteenth Amendment injury. E.N. argues that in Whalen v. Roe, 429 U.S. 589 (1977), the Supreme Court recognized freedom from government disclosure as a component of the right to privacy developed in substantive due process jurisprudence. E.N.'s reliance on Whalen and its progeny is partly misplaced: these cases involve the systematic collection of sensitive personal information by government agencies. Id. at 599-604 (discussing New York statute requiring a copy of every prescription for certain drugs be provided to the state along with patient identification and holding that the statute does not invade any right or liberty protected by the Fourteenth Amendment). The Whalen Court discussed such disclosure mainly as a factor in the means-ends fit prong of the substantive due process analysis.

in Count III will be dismissed.  The court will grant E.N. leave to file an amended complaint.

## B.    Claims under Title IX

E.N. alleges in counts IV, V, and VI, that the course of conduct by Frank constitutes sexual harassment.  She contends that the school district was in violation of Title IX when its administrators failed to respond to past allegations of sexual harassment by Frank and failed to respond adequately to E.N.'s allegations. E.N. further alleges that the school district, through its employees, retaliated against E.N. for reporting the Title IX violations.  As a result of the sexual harassment, the intimidation and coercion of school employees, and the offensive conduct of Frank's supporters, E.N.'s claims she was deprived of her equal right to education under the statute.[10]

Title IX proscribes discrimination, exclusion, or denial of benefits on the basis of sex in educational institutions or programs which receive federal funding. 20 U.S.C. § 1681 ("No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial

---

[10] E.N. initially named all defendants, including the individual defendants, in her denial of education claim, and she named all defendants except Frank in her retaliation claim.  E.N. acknowledges in her reply brief to the motion to dismiss that individuals may not be held liable for Title IX violations.  See Fitzgerald v. Barnstable Sch. Comm., --- U.S. ---, 129 S. Ct. 788, 796 (2009).  Hence, the court will dismiss the Title IX claims against Frank, Leitner, Volkman, Baumgardner, Pensiero, Brenner, and Mrs. Frank.

assistance[.]").[11]  Title IX is enforced through agency oversight, see 20 U.S.C. § 1682

(federal agencies are to enforce Title IX nondiscrimination mandate through "any .

. . means authorized by law"), however, the Supreme Court has recognized an

implied private right of action to enforce Title IX, see Cannon v. University of

Chicago, 441 U.S. 677 (1979), as well as a monetary damage remedy in such private

actions.  See Franklin v. Gwinnett Cnty Pub. Schs., 503 U.S. 60 (1992).  The Court,

however, has rejected a *respondeat superior* basis for liability.  Gebser v. Lago Vista

Indep. Sch. Dist., 524 U.S. 274, 285 (1998); Warren, 278 F.3d at 169.  A plaintiff,

therefore, may not recover damages against a school district unless "an official of

the school district who at a minimum has authority to institute corrective measures

on the district's behalf has actual notice of, and is deliberately indifferent to, the

teacher's misconduct."  Gebser, 524 U.S. at 277; see also Bostic v. Smyra Sch. Dist.,

418 F.3d 355, 359 (3d Cir. 2005); Young, 2008 WL 417739 at *7.

---

[11]  It is undisputed that the school district receives federal financial
assistance.  (Doc. 1 ¶ 11).

### 1.    <u>Sexual Harassment</u>

To succeed on a Title IX sexual harassment claim, a student must show: (1) quid pro quo sexual harassment, or a sexually hostile educational environment;[12] (2) actual notice by an "appropriate person" who has the authority to take corrective measures; and, (3) a response to the harassment that amounts to deliberate indifference.  <u>Bennett v. Pa. Hosp. Sch. of Nurse Anesthesia</u>, No. Civ.A. 01-CV-4098, 2002 WL 32341792 at *3 (E.D. Pa. Oct. 29, 2002) (citing <u>Gebser</u>, 524 U.S. at 291-92).

### a.    ***<u>Quid Pro Quo</u> <u>Sexual Harassment</u>***

To establish a quid pro quo sexual harassment claim E.N. must show (1) that she belongs to a protected group; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on her sex; and, (4) that a tangible educational action resulted from her refusal to submission to or rejection of the sexual harassment.  <u>See</u> <u>Bonenberger v. Plymouth Twp.</u>, 132 F.3d 20, 27 (3d Cir. 1997) (listing elements in a Title VII *quid pro quo* sexual harassment); <u>see also</u> <u>Gyda v. Temple Univ.</u>, No. Civ.A. 98-1374, 2000 WL 675722 at *6 (E.D. Pa. May, 23, 2000) (citing <u>Crandell v. NY Coll. of Osteopathic Med.</u>, 87 F. Supp. 2d 304, 314 (S.D.N.Y. 2000)).

---

[12]  Title IX jurisprudence has borrowed liberally from case law interpreting other federal anti-discrimination statutes, particularly Title VII, to explicate the contours of actionable sexual harassment.  <u>See</u> <u>Dawn L. v. Greater Johnstown Sch. Dist.</u>, 586 F. Supp. 2d 332, 366-67 (W.D. Pa. 2008) (applying Title VII jurisprudence to Title IX cause of action); <u>id.</u> at 366 n.56 (citing sources applying Title VII jurisprudence to Title IX sexual harassment claims).

E.N. is a female and, thus, belongs to a protected class. Frank subjected her to unwelcome sexual harassment during the course of her driving lessons in February and March of 2006. Defendants argue however, that E.N. fails to allege quid pro quo harassment because she did not rebuff the sexual advances or experience adverse educational actions. (Doc. 22 at 15). The court disagrees.

In the employment context, tangible action includes changes in compensation, position, status, title, or assignments. <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998). The tangible actions a teacher might take are perhaps more limited, but include any power the teacher has to permit the student to attend a particular class or to grade the student's performance. Taking the facts as alleged in the complaint, it can reasonably be inferred that Frank controlled whether E.N. would pass the course and proceed to her state licensing exam. Frank threatened E.N. by telling her that if she knew what was good for her she would "do this," and he warned her not to tell anyone what happened because he knew where she lived. It can be reasonably inferred that Frank expected E.N. to submit to his sexual advances or he would not allow her to pass the course if she refused. In submitting to the sexual assault, E.N. avers that she was denied the tangible educational benefit of taking driving lessons free from inappropriate sexual advances and demands.

E.N. has sufficiently alleged that she was singled out as a member of a

protected class, and that her success or failure as a student was tied to sexual

favors. E.N. has adequately alleged that Frank's conduct was sexual harassment

involving tangible education actions.

### b.    Hostile Education Environment

E.N. also alleges a sexually hostile education environment in violation of Title

IX. See Saxe v. State Coll. Area Sch. Dist., 240 F.3d 200, 205 (3d Cir. 2001) (finding

that "the Supreme Court has recognized that a public school student may bring suit

against a school under Title IX for so-called 'hostile environment' harassment"). To

succeed, E.N. must demonstrate: (1) she suffered intentional discrimination

because of her sex; (2) the discrimination was pervasive and regular; (3) the

discrimination detrimentally affected her; and, (4) the discrimination would have

detrimentally affected a reasonable person in her position. Bennett, 2002 WL

32341792 at *3 (citing Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 650 (1999)).

E.N. alleges a hostile educational environment created by Frank's actions.

She adequately alleges the first prong of discriminatory treatment based on her sex.

To satisfy the second element E.N. must show harassment "so severe, pervasive,

and objectively offensive" as to deprive her of educational benefits and

opportunities. Chancellor v. Pottsgrove Sch. Dist., 529 F. Supp. 2d 571, 575 (E.D.

Pa. 2008) (quoting Davis, 526 U.S. at 650); Young, 2008 WL 417739 at *7; see also

Saxe, 240 F.3d at 205. Factors in this analysis include the frequency of the conduct,

nature of the conduct (physical, verbal, or both) and the relationship between the

34

parties.  <u>Pottsgrove Sch. Dist.</u>, 529 F. Supp. 2d at 575.  Although Frank's conduct is alleged on only three occasions, his conduct is severe in nature.  Additionally, as a teacher, Frank was in a position of authority.  Elements three and four are undeniably alleged given that the conduct purportedly involved a forced sex act.

E.N. also alleges a hostile education environment based on the conduct of the other defendants.  She states that the other defendants created an environment of intimidation, coercion and fear resulting in psychological damage, physical harm and emotional distress to the point she was no longer able to attend school.  She alleges that she was required to complete her senior year in homebound instruction in a format that was inferior to classroom instruction.  (Doc. 1 ¶¶ 125, 188).  This claim, sounding in retaliation, is misplaced.  A claim for retaliatory conduct falls within the ambit E.N.'s Title IX retaliation claim.  <u>See</u> <u>infra</u> Part II.B.2.

### c.    **Actual Notice to an Appropriate Person**

The second prong of a Title IX claim requires actual knowledge of the sexual harassment by an appropriate person.  <u>Warren</u>, 278 F.3d at 169 (discussing <u>Gebser</u>, 524 U.S. 274).  An appropriate person "is, at a minimum an official of the recipient entity with authority to take corrective action to end the discrimination."  <u>Gebser</u>, 524 U.S. at 290; <u>id.</u> at 291 (noting that Title IX's remedial scheme is predicated on an appropriate person who can take corrective measures having actual notice of violations).

A school principal will ordinarily be an appropriate person for purposes of Title IX notice. Warren, 278 F.3d at 171; id. at 170 (stating Gebser discussion indicates principal could be appropriate person under Title IX if he has actual knowledge of the conduct and was deliberately indifferent to it, otherwise a "substantial portion" of the analysis in Gebser would be "nothing more than a meaningless discussion"); Bostic, 418 F.3d at 362. "The authority to supervise a teacher and to investigate a complaint of misconduct implies the authority to initiate corrective measures such as reporting [one's] findings to [one's] superior or to the appropriate school board official at the very least." Warren, 278 F.3d at 173.

The appropriate person, such as the principal, must have actual knowledge of the misconduct and fail to respond. Bostic, 418 F.3d at 362; Warren, 278 F.3d at 173-74. Knowledge of the mere possibility of harassment is insufficient to constitute awareness, but an appropriate person need not be absolutely certain that harassment has occurred in order to satisfy the knowledge requirement. See Dawn L. v. Greater Johnstown Sch. Dist., 586 F. Supp. 2d 332, 367 (W.D. Pa. 2008) (citing Bostic, 418 F.3d at 360). "An educational institution has 'actual knowledge' if it knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger." Bostic, 418 F.3d at 361 (quoting 3C Fed. Jury Prac. & Instr. § 177.36 (5th ed. 2001)).

In the instant matter, E.N. avers that prior to her alleged sexual assault, the school district—particularly Volkman and Leitner, as appropriate persons—were aware of Frank's decades long history of harassment and inappropriate conduct

36

towards females.  They knew of at least two prior incidents of harassment, and that

Frank had developed a reputation for such inappropriate behavior.  If they did

nothing to rectify the situation, the school district can be held liable.  See Young,

2008 WL 417739 at *7.

E.N. also alleges that, after the alleged sexual assault, Leitner, Volkman,

Pensiero and Brenner were all appropriate individuals who knew of and did

nothing about Frank's conduct.   Leitner, as principal, was an appropriate person

for Title IX purposes.  The complaint also alleges that a teacher referred E.N. to her

guidance counselors to report the sexual assault, that Brenner questioned Frank

about E.N.'s allegations, and that Brenner and Pensiero conducted the follow-up

meeting with E.N. *after* discussing the issue with the administration.  Based upon

these specific averments, E.N. has sufficiently alleged that Brenner and Pensiero

were appropriate persons under Title IX.  In sum, the complaint sufficiently posits

actual notice by appropriate persons.

### d.   **Deliberate Indifference**

E.N. must also establish that the school district acted with deliberate

indifference towards the sexual harassment.  Essentially she must show "an official

decision by the recipient [of federal funds] not to remedy the violation[s]."  Dawn L.,

586 F. Supp. 2d at 369 (quoting Gebser, 524 U.S. at 590); see also Bostic, 418 F.3d at

360.

E.N. avers that the school district failed to adopt a sexual harassment policy that conforms to Title IX requirements. (Doc. 1 ¶ 180). The lack of a policy and grievance procedure for sexual harassment claims (despite the requirement that each funding recipient adopt and publish grievance procedures, see 34 C.F.R. § 106.8(b) (2010)) is insufficient to establish actual notice and deliberate indifference by itself, but it is a factor that can be considered. Gebser, 524 U.S. at 291-92.

In conjunction with the lack of a sexual harassment policy, the complaint raises several inferences undermining the adequacy of the school district's response, both prior to and after the alleged assault. Prior to the assault, Leitner and Volkman knew of Frank's inappropriate conduct towards women dating back four decades. They knew of at least two specific instances of sexual harassment, and of Frank's general reputation in the school. Despite this knowledge, E.N. avers that the school district never investigated or disciplined Frank with respect to his conduct. Furthermore, E.N. alleges that Leitner and Volkman knew of and permitted Frank to take students out for one-on-one driving lessons in violation of the school district policy.

After E.N. reported the alleged assault, Brenner and Pensiero immediately disbelieved E.N. when she identified Frank as the person who assaulted her, and they sought her recantation. The school did not contact the police or PA Childline about the alleged assault in accordance with Pennsylvania law. (Doc. 1 ¶ 140). Leitner permitted Frank to visit with students on campus in August 2006, during his suspension. When the school district permitted Frank to return to work, he was

still under investigation by the Department of Public Welfare and the Department of Education, and E.N. alleges the school district never did its own investigation and never reprimanded Frank. Nor did the school make any effort to limit contact between Frank and E.N. after Frank was reinstated. Based upon the foregoing, E.N. alleges sufficient facts for a reasonable jury to conclude that the school district was deliberately indifferent.

## 2. **Title IX Retaliation**

E.N. also claims the school district retaliated against her for reporting the sexual assault in violation of Title IX. In order to state a claim for retaliation, E.N. must allege: (1) that she engaged in conduct protected by Title IX; (2) that the defendants took adverse action against her; and (3) that a causal link existed between the protected conduct and the adverse action. See Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 201 (3d Cir. 1994); Dawn L., 586 F. Supp. 2d at 373-74.

The adverse action "need not be great in order to be actionable, but it must be more than *de minimis*." Young, 2008 WL 417739 at *4 (citing McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006)) (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)) (internal quotations omitted). The retaliation must be "materially adverse" such that it would dissuade a reasonable person from coming forth with the charge. Dawn L., 586 F. Supp. 2d at 374-75 (citing Burlington, 548 U.S. at 77-78). Furthermore, the action must be motivated by "retaliatory animus." Id. (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281, 284 (3d Cir. 2000)). When the victim of retaliatory action cannot readily show the intent of the parties, retaliatory

intent may be assumed at the pleading stage from close proximity of the protected conduct and the tangible action.  <u>See</u> <u>Farrell</u>, 206 F.3d at 280 (discussing temporal proximity in a Title VII claim).

E.N.'s complaint to the administration and counselors qualifies as protected conduct under Title IX.  <u>See</u> <u>Dawn L.</u>, 586 F. Supp. 2d at 374 ("Protected activities include complaints of sexual discrimination to the courts, government agencies, or the funding recipient." (citing <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006)).  E.N. claims she was  isolated and humiliated during the 2006-2007 school year in retaliation for her complaint against Frank.  She faced teachers and students who were vocally supportive of Frank, and hostile to E.N.  On more than one occasion, her classes were taught by Mrs. Frank—a discomfiting situation for E.N. which was made worse by Mrs. Frank's public discussion of her family's hardships brought on by the allegations and criminal prosecution.  The school allowed students to wear tee-shirts that said "FREE FRANK" for a senior class photo.[13]  Teachers encouraged students to start a petition for Frank, and a teacher posted (in E.N.'s presence) one of Leitner's letters soliciting funds for Frank's criminal defense.

---

[13]  The court notes that the First Amendment is implicated for the students who wore the tee-shirts.  However, at this juncture, the record is unclear as to the role of the school administration in the endeavor.

E.N. and her mother asked defendant Baumgardner to protect E.N. from these situations. Baumgardner purportedly declined to place any restrictions on student rallies or teacher comments, or to ensure Mrs. Frank was not assigned to E.N.'s classes. Baumgardner placed sole responsibility on E.N. to leave anxiety-causing situations and promised flexibility in completing graduation requirements. Eventually, E.N. left school altogether, and completed her high school education at home, but the school district forced her to take tutoring sessions in public. All of these actions occurred after E.N. reported the sexual assault. These allegations adequately state a claim for Title IX retaliation.

**C.      Claims under the Pennsylvania Constitution**

E.N. alleges violations of her rights under Article I, §§ 1 and 8 of the Pennsylvania Constitution. These claims essentially mirror her claims under the Fourth and Fourteenth Amendments of the U.S. Constitution, which are analogous to § 8 and § 1, respectively.

Pennsylvania Constitution Article 1, § 1 states "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursing their own happiness." PA. CONST. Art. I, § 1. Pennsylvania Constitution Article 1, § 8 states: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures . . . ." PA. CONST. Art. 1, § 8. The language is nearly identical to the Fourth Amendment of the U.S. Constitution.

41

The parties disagree as to whether and to what extent state and federal rights are coextensive.  Courts in this district have found that the textual similarities between the federal and state provisions indicate a similarity in principal concern—a concern with intrusions on privacy within the course of a criminal investigation.  See SF ex rel. Freeman, 2008 WL 4680580 at *7.  Accordingly, for the same reasons that E.N.'s Fourth Amendment claims fail, so too must her claims under PA. CONST. Art. 1, § 8.

### D.    Pennsylvania Tort Claims

E.N. claims that all individual defendants participated in acts which constitute intentional infliction of emotional distress ("IIED") under Pennsylvania tort law.[14]  The school district contends that the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"), 42 PA. CONS. STAT. §§ 8541-8550, extends broad tort immunity to the school district and the defendant employees, and that the allegations as to the individual defendants other than Frank are legally insufficient to state claims for the independent tort of IIED.

The PPSTCA provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 PA. CONS. STAT. § 8541. There are eight exceptions to liability, id. § 8542(b), but E.N. has not alleged that

---

[14]  The school district concedes that the complaint adequately states claims for assault and battery, and intentional infliction of emotional distress against Frank individually.  (See Doc. 22 at 24).

defendant school district's actions fall into one of the enumerated exceptions. Therefore, under the PPSTCA, the school district cannot be held liable for IIED.

School district employees are also generally immune from liability under the PPSTCA for acts committed within the scope of their employment. 42 PA. CONS. STAT. § 8545 ("An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency."). As an exception to the Act, employees do not have immunity when their acts constitute "a crime, actual fraud, actual malice or willful misconduct." 42 PA. CONS. STAT. § 8550.

Willful misconduct has been defined as "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow." Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006) (quoting Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)) (quotations omitted). Essentially, willful misconduct is "synonymous with the term 'intentional tort,'" and is a demanding level of fault. Id. The existence of willful misconduct is a question of law. See Kuzel v. Krause, 658 A.2d 856, 860 (Pa. Commw. Ct. 1995).

To succeed in a cause of action for IIED, E.N. must allege the following elements: (1) the defendants' conduct was intentional or reckless, (2) the defendants' conduct was extreme and outrageous, (3) the defendants' conduct

caused emotional distress, and (4) the resultant emotional distress was severe.[15]
Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000); Hoy v. Angelone,
691 A.2d 476, 482 (Pa. 1997); see also Brufett v. Warner Commc'ns, Inc., 692 F.2d
910, 914 (3d Cir. 1982); S.F. ex rel. Freeman, 2008 WL 4680580 at *7.

"The gravamen of the tort of intentional infliction of emotional distress is
outrageous conduct on the part of the tortfeasor," Kazatsky v. King David Mem'l
Park, Inc., 527 A.2d 988, 991 (Pa. 1987), and 'it is for the court to determine in the
first instance' whether the element of outrageousness has been met. Swisher v.
Pitz, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005) (quoting Johnson v. Caparelli, 625
A.2d 668, 671 (Pa. Super. Ct. 1993)). Alleged misconduct must be so extreme "as to
go beyond all possible bounds of decency and to be regarded as atrocious, and
utterly intolerable in a civilized society. . . . the recitation of the facts to an average
member of the community would arouse his resentment against the actor, and lead
him to exclaim, 'Outrageous!'" Strickland v. University of Scranton, 700 A.2d 979,
987 (Pa. Super. Ct. 1997) (quoting Small v. Juniata College, 682 A.2d 350, 355 (Pa.
Super. Ct. 1996)) (citations and quotations omitted).[16] A failure to act, or the

---

[15] The Pennsylvania Supreme Court has not formally adopted the tort of
IIED. However, the court has indicated that if it were to recognize such a cause of
action, a plaintiff would have to plead and prove these elements. See Taylor v.
Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000) (citing RESTATEMENT
(SECOND) OF TORTS § 46 (Outrageous Conduct Causing Severe Emotional Distress)).

[16] At the motion to dismiss stage it is sufficient that E.N. has alleged
emotional distress. (Doc. 1 ¶¶ 149, 205); see Hall v. Raech, No. 08-5020, 2009 WL
811503 at *7 (E.D. Pa. 2009) (allowing IIED claim to survive motion to dismiss but
stating that plaintiff will eventually need to present competent medical evidence of

negligence of a party is insufficient to establish a claim for IIED.  <u>Jackson v. Sun Oil Co.</u>, 521 A.2d 469, 471 (Pa. Super. Ct. 1987).

E.N. alleges defendants actively retaliated against her with the deliberate intent of causing her emotional distress, or "with wanton disregard of [her] rights and feelings." (Doc. 1 ¶ 202).  Considered in isolation,[17] no defendant's actions can be said to be extreme and outrageous.  Mrs. Frank made personal comments about her family's troubles.  Leitner sent one letter while principal and another after retiring, but neither mentioned E.N. or provided details of the alleged assault.  No specific allegations of conduct are made against Volkman beyond a failure to act, and a failure to act is not actionable as IIED.  <u>See</u> <u>Jackson</u>, 521 A.2d at 471.  Guidance counselors Pensiero and Brenner purportedly disbelieved E.N., and Pensiero revealed confidential information to a parent, but this is insufficient to rise to the level of extreme and outrageous.  Finally, the only relevant allegation against principal Baumgardner is that she advised E.N. to leave situations where she felt uncomfortable.  E.N.'s complaint is insufficient to state a claim for IIED against any defendant except Frank.

---

emotion distress to support the claim).  Ultimately, E.N. must provide competent medical evidence to prove the existence of emotional distress.  <u>Kazatsky</u>, 527 A.2d at 995.

[17]  The court's analysis does not change when the defendants' actions are considered in the aggregate, particularly in light of the extended time period at issue.

### 2. School District *Respondeat Superior* Liability

In Count IX of her complaint, E.N. states a claim for *respondeat superior* liability against the school district. A school district, however, cannot be held liable on the basis of *respondeat superior* under the PPSTCA. 42 PA. CONS. STAT. § 8541. Therefore, E.N.'s claim for *respondeat superior* liability in Count IX of the complaint must fail.

### E. Punitive Damages

In Count XI, E.N. requests punitive damages against all defendants for all viable claims. The court will address punitive damages only with respect to the remaining claims.

### 1. School District and Defendants in Their Official Capacities

E.N. cannot recover punitive damages against the school district or any of the defendants in their official capacities. Punitive damages are simply not available against a school district for claims brought pursuant to § 1983. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (municipality immune from punitive damages under § 1983); Young, 2008 WL 417739 at *10. The availability of punitive damages in a Title IX action has never been decided by the Supreme Court or any court of appeals, however the court concludes that punitive damages are not available in private actions to enforce Title IX.

Title IX was modeled after Title VI of the Civil Rights Act of 1964. See Gebser, 524 U.S. at 286 (citing Cannon, 441 U.S. at 694-96). Both statutes invoke the Spending Clause and offer federal funding to states conditioned on non-

46

discrimination—in essence creating a contract between the federal government and the state.  Id. at 286; see also Barnes v. Gorman, 536 U.S. 181, 185-86 (2002) (explaining that Title VI was enacted under the Spending Clause and noting that the court has "repeatedly characterized this statute and other Spending Clause legislation as 'much in the nature of a *contract*: in return for federal funds, the [recipients] agree to comply with federally imposed conditions'") (citing Pennhurst State Sch. and Hospital v. Holderman, 451 U.S. 1, 17 (1981)).  The Supreme Court has stated:

> Title IX's contractual nature has implications for our construction of the scope of available remedies.  When Congress attaches conditions to the award of federal funds under its spending power, as it has in Title IX and Title VI, we examine closely the propriety of private actions holding the recipient liable in monetary damages for noncompliance with the condition.  Our central concern in that regard is with ensuring that "the receiving entity of federal funds [has] notice that it will be liable for monetary awards."

Gebser, 524 U.S. at 287 (citations omitted).  Extending this contract law analogy, it is well settled that punitive damages are not an available remedy for breach of contract.  See W.A. Wright, Inc. v. KDI Sylvan Pools, Inc., 746 F.2d 215, 217 (3d Cir. 1984).  In addition, the court notes that the Supreme Court has expressly rejected punitive damage claims in Title VI private actions.  Barnes, 536 U.S. at 188.  The Barnes Court explained that there is no support for a remedy not normally available for contract actions and of indeterminate magnitude.  Id. at 188; see also id. (Noting that "compensatory damages alone 'might well exceed a recipient's level of funding;' punitive damages on top of that could well be disasterous").  Indeed, a

47

school district would be hesitant to accept federal funds if such acceptance exposed it to punitive damages.  Davis, 526 U.S. at 656 (Kennedy, J., dissenting) ("Without a doubt, the scope of potential damages liability is one of the most significant factors a school would consider in deciding whether to receive federal funds.").

The private right of action for damages under Title IX is judicially implied. See Gebser, 524 U.S. at 283-84 (citing Cannon, 441 U.S. at 717); id. at 284 (damages remedy available through private right of action under Title IX) (citing Franklin, 503 U.S. at 68-73).  Hence, courts must be cautious about expanding the right.  See City of Newport, 453 U.S. at 263-64 (explaining that courts should refrain from imposing punitive damages against municipalities absent express statutory authority from Congress to the contrary).

E.N. directs the court to Hurd v. Delaware State Univ., No. 07-117, 2008 W.L 4369983 (D. Del. Sept. 25, 2008), for the proposition that a government entity, such as a school district, may be held liable for punitive damages under Title IX.  See also Schultzen v. Woodbury Cent. Cmty. Sch. Dist., 187 F. Supp. 2d 1099 (N.D. Iowa 2002) (punitive damages available against municipality under Title IX for public policy reasons).  Acknowledging this contrary authority, the court rejects the reasoning of Hurd and relies upon the rationales of the majority of cases decided by courts in this circuit holding that punitive damages are not available under Title IX. See Dawn L. v. Grater Johnstown Sch. Dist., 586 F. Supp. 2d 332, 383 (W.D. Pa. 2008) (punitive damages not available for violations of Title IX) (citing Barnes, 536 U.S. at 186-88); Collier v. William Penn Sch. Dist., 956 F. Supp. 1209, 1217 (E.D. Pa.

1997); <u>Doe v. Allentown Sch. Dist.</u>, No. 06-cv-1926, 2009 WL 536671 at *5 (E.D. Pa. Mar. 2, 2009); <u>see</u> <u>also</u> <u>Doe 20 v. Bd. of Educ. of Cmty Unit Sch. Dist. No. 5</u>, 680 F. Supp. 2d 957, 995 (C.D. Ill. 2010); <u>Hooper v. North Carolina</u>, 379 F. Supp. 2d 804, 811 (M.D.N.C. 2005). "The general rule today is that no punitive damages are allowed unless expressly authorized by statute." <u>City of Newport</u>, 453 U.S. at 261 n.21. Title IX does not authorize punitive damages. Therefore, the court concludes that punitive damages are unavailable against a school district under Title IX.

### 2. **Punitive Damages Against Individuals**

Title IX does not allow for individual liability, therefore, punitive damages are not available against any individual defendant for Title IX claims. Punitive damages are available, however, against individual defendants in their individual capacities under § 1983. <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983); <u>Young</u>, 2008 WL 417739 at *10. Punitive damages are available where individual defendants are "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." <u>Smith</u>, 461 U.S. at 56. E.N. has alleged sufficiently egregious conduct against Frank, Leitner, Volkman, and Pensiero at this stage to seek punitive damages for Fourteenth Amendment violations. Punitive damages are also available on the surviving state law claims against Frank. <u>See</u> <u>Udujih v. City of Philadelphia</u>, 513 F. Supp. 2d 350, 358 (E.D. Pa. 2007).

**IV. CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss will be granted in part and denied in part. E.N. has adequately stated claims against Frank for violation of her Fourteenth Amendment rights and for the torts of assault, battery, and intentional infliction of emotional distress. E.N. has adequately stated a claim against the school district, and Leitner and Volkman in their individual capacities with regard to the Fourteenth Amendment bodily integrity claim. E.N. has adequately stated a claim against Pensiero, for violation of E.N.'s Fourteenth Amendment right to privacy. Finally, E.N. has adequately stated a Title IX sexual harassment claim and a Title IX retaliation claim against the school district. E.N. has failed to state claims as to all other individual defendants and as to the school district on all other theories of liability. Punitive damages may be available as to Frank, Leitner, Volkman, and Pensiero but are barred as to the remaining claims against the school district.

An appropriate order follows.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:     November 23, 2010

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

E.N.,

     **Plaintiff**

   **v.**

**SUSQUEHANNA TOWNSHIP SCHOOL DISTRICT, JAMES FRANK, NANCY FRANK, KERMIT LEITNER, DAVID W. VOLKMAN, SANDIE L. PENSIERO, RANDY BRENNER**, *and* **JUDY BAUMGARDNER,**

     **Defendants**

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**CIVIL ACTION NO. 1:09-CV-1727**

**(Judge Conner)**

## <u>ORDER</u>

AND NOW, this 23rd day of November, 2010, upon consideration of defendants' motion (Doc. 19) to dismiss, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion (Doc. 19) to dismiss is GRANTED in part as follows:

  a. Counts I and II are dismissed as to the Fourth Amendment claims.

  b. Count II is dismissed as to Pensiero and Brenner with respect to the Fourteenth Amendment claim.

  c. Count III is dismissed as to all defendants except Penseiro.

  d. Count V is dismissed.

  e. Count VI is dismissed as to all defendants, except the school district.

  f. Count VII is dismissed as to all defendants, except Frank.

  g. Counts IX and X are dismissed.

  h. Count XI is dismissed as to the school district and all defendants in their official capacities.

2.      The motion is DENIED in all other respects.

3.      E.N. is GRANTED leave to file, within twenty (20) days of the date of
        this order, an amended complaint with respect to her Fourteenth
        Amendment privacy claims.   If no such amended pleading is filed, the
        instant matter will proceed on all remaining claims.


                                      _S/ Christopher C. Conner____
                                      CHRISTOPHER C. CONNER
                                      United States District Judge